**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**MICHAEL E. WHALEN**                                                     **PLAINTIFF**

**V.**                                                     **CIVIL ACTION NO. 3:21CV-24-DAS**

**KILOLO KIJAKAZI,
ACTING COMMISSIONER OF SOCIAL SECURITY**                       **DEFENDANT**

**MEMORANDUM OPINION AND JUDGMENT**

This cause is before the court on the plaintiff's complaint for judicial review of an unfavorable final decision by the Commissioner of the Social Security Administration denying his application for disability insurance benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal directly to the Court of Appeals for the Fifth Circuit. The court, having reviewed the administrative record, the briefs of the parties, and the applicable law and having heard oral argument, finds the decision of the Commissioner of Social Security should be reversed and the matter remanded for further proceedings.

**I.     THE ALJ'S DECISION**

The plaintiff Michael Whalen (Whalen) filed for benefits on March 5, 2019, alleging onset of disability on January 24, 2018. The Social Security Administration denied the claim initially and on reconsideration. Following a hearing, the ALJ issued an unfavorable decision on August 28, 2020. (Dkt. 13, p. 15-27).[1] The Appeals Council denied the request for review, and this timely appeal followed.

---

[1] All references are to the administrative record. Because the court's ECF system is locating files by the administrative number, cites are to that number, not the ECF numbers.

The ALJ determined Whalen had the following severe impairments: bilateral primary osteoarthritis of the knees and osteoarthritis in both shoulders. His last date insured was September 30, 2020. The ALJ found Whalen retained the residual functional capacity (RFC) to perform  light work, except he can only occasionally climb ramps and stairs, can never climb ladders, ropes, or scaffolds, and can only occasionally balance and stoop. He can never kneel, crouch, or crawl. He can only occasionally reach overhead with both arms. He must avoid even moderate exposure to unprotected heights and moving machinery. He also needs the option to sit or stand at will.

The ALJ found Whalen cannot perform his past relevant work as a diesel mechanic, which is skilled work generally performed at the heavy exertional level. Based on the testimony of the vocational expert (VE), the ALJ found Whalen can do other jobs that exist in significant numbers in the national economy, namely as a routing clerk, order caller, and mail sorter. These are all unskilled jobs performed at the light level of exertion and represent about 239,000 jobs in the national economy. The ALJ therefore determined that Whalen was not disabled.

## II.   **ANALYSIS**

Whalen raises multiple arguments in support of his appeal. The court will address only the issue it finds dispositive—the ALJ's failure to order a consultative examination (CE) and obtain a medical source statement. Because the ALJ failed to obtain an expert medical opinion addressing Whalen's functional capacity, the court finds there is no substantial evidence to support the ALJ's RFC determination. Ultimately, the ALJ erred by relying on his lay opinion of the raw medical data in assessing the RFC.

A. **MEDICAL RECORD AND FACTS**

Whalen worked for the same John Deere tractor dealership for over fifteen years as a diesel mechanic and has a consistent work history extending back to 1985. R. 43. He suffered bilateral rotator cuff tears attempting to lift an engine at work. The tears were surgically repaired, but he developed osteoarthritis in both shoulders. Whalen also later suffered meniscal tears in both knees which necessitated surgery and led to a diagnosis of bilateral osteoarthritis, worse on the right.

Whalen was consistently treated by pain management specialists beginning in June of 2013. (R. 485-541, 525). However, the ALJ dismissed the pain management specialists' findings, considering them to be based solely on subjective complaints  As the ALJ notes, these physicians did not perform physical examinations at every visit, including deferring an examination when Whalen complained of severe pain. But their treatment records show consistent complaints of joint pain, coupled with objective findings of bilateral positive straight leg raising tests and limited range of motion in both lower extremities. Whalen also had absent bilateral patellar deep tendon reflexes. The pain management specialists further found Whalen had consistent joint pain and limited range of motion in both shoulders.

In this case, the state agency medical consultants (SAMCs)[2] found there was insufficient evidence to document the impairments as "medically determined." R. 24. The ALJ rejected these opinions because other records showed that Whalen has significant limitations "consistent with osteoarthritis of both knees and both shoulders." R. 25. Whalen was granted time to submit a

---

[2] The Social Security Administration has long used physicians and mental health professionals to screen the treatment records and assess functional capacity. Under prior regulations these consultants were called either Disability Determination Service or State Agency Disability Determination providers. The new regulations have changed the name for these providers. This opinion refers to these professionals by the names in effect at the time decisions were rendered.

medical source statement from a treating physician but reported the physician declined to provide one. Whalen then requested a CE. The ALJ neither ordered a CE nor addressed Whalen's request, but assessed an RFC with significant, though not disabling, limitations. The decision denying benefits is based on an administrative record devoid of any opinions from a medical expert, examining or non-examining, addressing the functional impact of Whalen's medical conditions on his capacity to work. The question before this court is whether it was reversible error to decide this case without such expert opinions.

## B. DUTY TO DEVELOP THE RECORD AND THE ROLE OF EXPERT OPINION

Whalen argues the ALJ had to order a CE to properly develop the record. Because there are no medical opinions in the record, he contends the ALJ improperly played doctor in assessing the RFC. Whalen claims this failure to develop the record and the ALJ's lay interpretation of the medical records mean there is no substantial evidence to support the RFC.

The Commissioner counters the ALJ has discretion, per its regulations, to grant or deny a request for a CE and did not err in denying Whalen's request. The pertinent regulation provides that if "we have insufficient evidence to determine whether you are disabled… [w]e *may* ask you to undergo a consultative examination at our expense…." 20 C.F.R. § 404.1520b (c)(3). The Commissioner argues Whalen is wrong when he asserts the case must be remanded based on the lack of medical opinions or that the absence of such an opinion renders record incomplete or "insufficient." According to the Commissioner, the court should instead look to see if other substantial evidence supports the RFC.

It is true that an ALJ has the sole responsibility to determine a claimant's RFC. *Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir. 1995) (citing 20 C.F.R. § 404.1546). However, because ALJs lack the necessary expertise to correlate medical conditions to functional limitations, "[u]sually

4

the ALJ should request a medical source statement describing the types of work that the applicant is still capable of performing." *Id*. In determining a claimant's RFC, an ALJ is not limited to adopting one or more medical opinions from the administrative record but considers all the evidence in the record. *Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 1995).

The absence of medical opinions does not invariably render a record incomplete or inadequate to support an ALJ's determination of the RFC. *Ripley*, 67 F.3d at 557. But the Fifth Circuit has cited with approval Judge Posner's warning:

> [J]udges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.... The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of lawyers who apply them. *Common sense can mislead; lay intuitions about medical phenomena are often wrong.*

*Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)) (emphasis added). A thorough review of the law on this point reveals it is a rare case where ALJs have the capacity to determine the RFC without expert functional capacity opinions.

### C.  APPLICABLE FIFTH CIRCUIT LAW

While *Ripley v. Chater* holds the absence of medical source statements is not necessarily fatal to an ALJ's determination of the RFC, in that case, the Fifth Circuit reversed the Commissioner's decision because of the lack of medical opinions. *Ripley*, 67 F.3d at 557. Ripley had a four-year history of back pain, medical examinations, and a surgery. He testified he could neither sit nor stand for any length of time without experiencing great pain; he could do little work around his home; he could not sit through a church service; and he could drive for only short distances. The ALJ determined he could perform sedentary work.

The Fifth Circuit remanded Ripley's case because no expert opinion addressed Ripley's back problems. Because ALJs lack the necessary expertise to determine functional limitations, the court held medical opinions "were necessary to determine the impact of Ripley's impairments on his ability to work *no matter how small*." *Id*. at 557, n. 27 (emphasis added). Substantial evidence did not support the ALJ's RFC determination and the ultimate question of disability.

In *Joseph-Jack v. Barnhart*, the court rejected the argument that there was no substantial evidence "because the record was devoid of a residual function capacity (RFC) assessment by a medical source." *Joseph-Jack v. Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003). However, the Fifth Circuit held "it was not error for the ALJ to use the orthopedic consultative examiner's report in support of the disability determination." Even without an RFC assessment by a medical source, the opinion indicates there was a medical opinion in the record to support the RFC, *i.e.*, the orthopedic consultative examiner's report.

In *Frank v. Barnhart,* the ALJ erred when he discounted the plaintiff's testimony and made an improper medical judgment when he decided Frank would be exhibiting muscle atrophy if her condition were as severe as she described. *Frank v. Barnhart,* 326 F.3d at 622, 623. The court found the ALJ's assumption was an example of improperly playing doctor but ultimately found the error was harmless as the credibility determination did not impact the well-supported RFC.

In *Williams v. Astrue*, the Fifth Circuit re-affirmed its decision in *Ripley*, explaining "that an ALJ may not—without opinions from medical experts—derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions." *Williams v. Astrue*, 355 F. App'x 828, 832, n. 6 (5th Cir. 2009). There, the ALJ discounted the

findings of all treating physicians, leaving no substantial evidence to support the RFC. Although the ALJ could assign non-controlling weight to any treating physicians' opinions, under then-applicable regulations, the ALJ's findings still needed to be supported by substantial evidence. *Id.* at 831–32. Regulatory changes since *Williams* have abolished the preference for treating-source opinions, but the changes do not impact the ultimate ruling in that case—an "ALJ may not rely on his unsupported opinion as to the limitations presented by the applicant's medical conditions." *Id.* at 832, n.6.

Cases upholding decisions despite a lack of medical or other expert opinions are usually cases with little or no evidence of a significant impairment or cases where compelling non-medical evidence casts such serious doubt on the applicant's credibility as to suggest malingering. For example, in *Taylor v. Astrue*, the Fifth Circuit upheld a denial of benefits against an argument that medical opinions were necessary. *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). Taylor claimed to have chronic pain in his feet, legs, and back, plus tarsal tunnel syndrome, nerve entrapment, and plantar fasciitis, but the court rejected the argument the ALJ made his decision on bare medical records. The ALJ's decision noted a normal MRI, EEG, and neurophysiological studies, and "one of Taylor's own doctors remarked that '[i]t appears that the patient does not have any anatomical reason [for] his pain.'" Additionally, a "different doctor testified similarly at the ALJ hearing." *Id.* The administrative record not only casted doubt on the validity of Taylor's claims, but the record also included supporting medical opinions.

Sometimes non-medical evidence may be sufficient to support an RFC despite the lack of expert opinions. In *Gutierrez v. Barnhart*, the plaintiff argued the ALJ erred in assessing her RFC without an up-to-date medical source statement. *Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289 (5th Cir. Aug 19, 2005). The DDS physicians previously opined Gutierrez was

limited to sedentary work. However, the plaintiff's medical records, after the DDS report, showed back pain on straight leg raising; "mild degenerative changes at L4-L5, with a central herniation at L5-S1, and a secondary right lateral disk protrusion at that level affecting the nerve spot." *Id.* at *2. Without the benefit of an updated function-by-function expert opinion, the ALJ decided the medical evidence and testimony showed Gutierrez was not as limited as DDS opined and found she could perform a limited range of light work.

The Fifth Circuit upheld the ALJ's decision finding the absence of medical opinions for the later records was not fatal because of other supporting evidence. The ALJ compiled an extensive list of reasons why he found Gutierrez was not credible. The DDS physicians questioned her credibility because of gross disparities in findings and symptoms between examinations in February and October without any intervening trauma to explain those disparities. Adding to this inexplicable decline, Gutierrez had no medical impairment to explain many of her complaints, including a claimed global weakness. Gutierrez testified she needed crutches to ambulate, but none were prescribed, and she appeared at the hearing without them. She reported weight loss while her medical records showed she had gained weight. She refused further surgery to correct her back problems and had no medical treatment between 2000 and 2002. Furthermore, Gutierrez testified that her past jobs, as a keno runner and laundry ticketer, were not difficult despite her medical conditions. Because these jobs were within the assessed RFC, her testimony supported the ALJ's RFC determination, and an updated medical opinion was not required.

### i. *MOORE V. SAUL*

Here, the court must determine whether an ALJ can decide the RFC, and with it the question of disability, without a supporting medical opinion when a medical opinion is

indispensable. In *Moore v. Saul,* this court put forth its rationale for distinguishing when a medical opinion is required. *Moore v. Saul,* No. 3:20CV161-MPM-JMV, 2022 WL 987735 (N.D. Miss. Mar. 31, 2022). SAMCs assessed an RFC, but there were no opinions based on later medical records. Moore argued the ALJ erred in making a disability determination without expert guidance, and the court agreed.

ALJs may not develop an RFC based on raw medical data but may do so based on objective medical evidence, defined as "medical evidence where the extent of functional loss and its effects on job performance would be apparent even to a lay person." *Id.* at *2 (citing *Minor v. Astrue,* No. 1:13CV17-HSO-RHW, 2014 WL 936438 at *6 (S.D. Miss. Mar. 10, 2014) and *Gordils v. Sec. of Health and Human Services,* 921 F. 2d 327, 329 (1st Cir. 1990))[3]. By

---

[3] This court's analysis in *Moore* provides guidance for cases in which the ALJ need not obtain additional medical opinions in order to render an opinion that is supported by substantial evidence.

In *Minor v. Astrue,* a case from the Southern District of Mississippi, the court upheld an RFC based on the statement of a DDS physician that addressed the claimant's degenerative disc disease but did not address later complaints of knee pain. *Minor v. Astrue,* No. 1:13CV17-HSO-RHW, 2014 WL 936438 at *6 (S.D. Miss. Mar. 10, 2014). The claimant complained of knee pain at only one visit, and the physical examination revealed mild swelling. The doctor treated the knee with an injection but planned no further treatment. At her next visit, the records noted Minor ambulated normally. An x-ray of the knees a year later noted only some mild degenerative changes. On that scant medical record, substantial evidence supported the ALJ's finding that the claimant's knee complaints were not severe at Step Two. The ALJ was permitted to make a common-sense judgment because it did not amount to rendering a medical judgment. No further consultative examination was required.

In *Gordils v. Sec. of Health and Human Services,* the plaintiff alleged disability due to back and leg problems. *Gordils v. Sec. of Health and Human Services,* 921 F. 2d 327, 329 (1st Cir. 1990). A consulting neurologist reported there was no consistent neurological deficit or clear objective evidence to substantiate either an old protracted or new active lumbo-sacral root syndrome. He noted the patient had tried to confuse the examiner. He opined Gordils likely had "a weaker back," but made no findings in functional terms. The ALJ found the claimant could perform a full range of light work and was therefore deemed not disabled by the grid rules. The First Circuit Court of Appeals stated:

> It is true, too, that we have held—and we reiterate—that since bare medical findings are unintelligible to a layperson in terms of residual functional capacity, the ALJ is not qualified to assess residual functional capacity based on a bare medical record. This principle does not mean, however, that the Secretary is precluded from rendering common-sense judgments about functional capacity based on medical findings, as long as the Secretary does not overstep the bounds of a layperson's competence and render a medical judgment.

*Id.* at 329. (Internal citations omitted).

The *Gordils* Court affirmed the denial of disability, finding the ALJ could translate the finding of a "weaker back" into the ability to perform work but only at sedentary exertion. Under the grid, the plaintiff would be deemed "not disabled" whether limited to light or sedentary work capacity. The court stressed it was troubled by any lay conclusion that a "weaker back" would not eliminate light work and did not affirm on that basis.

comparison, raw medical evidence "does not permit 'common-sense judgments about functional capacity' and instead requires the ALJ 'to overstep the bounds of a lay person's competence and render a medical judgment.'" *Id*. (quoting *Minor*, 2014 WL 936438 at * 6).

In *Moore*, the court found the ALJ lacked the capacity to make such a commonsense judgment where the records noted disc bulging and moderate facet degenerative changes. The court further noted the only medical opinion in the record did not address the impact of Moore's documented knee pain on her ability to work. The court held ALJs may not play doctor by interpreting raw medical evidence because doing "so involves judging matters entrusted to experts." *Id*. at *3. Reversing the Commissioner's decision, the court stated "the ALJ's findings are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Id.* (quoting *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999)).

This court noted the precedent cited by the Commissioner in *Moore* actually supported the determination that medical opinions were necessary. In *Taylor v. Astrue*, the ALJ's decision was supported by medical opinions; on appeal, Taylor argued ALJ had rejected favorable opinions. *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). Likewise, in *Fontenot v. Colvin,* the ALJ had not relied on his own opinion in formulating the RFC but on the reports of two consultative examiners and a physician's review. *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016). Rather than formulating the RFC based on medical information, the ALJ "weighed the persuasive value of medical expert opinion." *Moore*, 2022 WL 987735 at *2. *Moore* further noted that all cases cited by the Commissioner, including *Barrett v. Berryhill,* 906 F. 3d 340 (5th Cir. 2018), *as revised* (Oct. 16, 2018) and *Joseph-Jack v. Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003) in fact contained expert opinions.

## ii.  APPLYING *MOORE'S* RATIONALE

Applying *Moore's* reasoning, is the present case one in which a medical opinion addressing functional capacity is indispensable?

Given the RFC, this is not a case where one can argue that common sense makes it obvious that Whalen has only minimal restrictions. The RFC distinguishes this case from those in which the claimant has no significant functional limitations, such as in *Minor v. Astrue* with one complaint and treatment for knee pain. *Minor*, 2014 WL 936438. This case differs from *Taylor v. Astrue* where a physician found the plaintiff's complaints of pain were "without anatomical reason." *Taylor*, 706 F.3d 600. Whalen's medical conditions are not so simple and common as to make the extent of his functional impairment obvious to a lay person. Two torn, repaired rotator cuffs, with bilateral arthritis and pain in the shoulders, plus limitations in range of motion in the upper extremity neither suggest minimal restrictions nor make clear the extent of Whalen's functional limitations.

The ALJ's questions to the VE demonstrate the extent to which the ALJ was making a medical judgment in forming the RFC and the extent to which the ALJ had to thread the needle on the RFC to make the ultimate determination of disability *vel non*. The medical records show Whalen had consistent complaints of pain and limited range of motion in his upper extremities. Whalen testified he had very limited ability to reach, not only overhead but also to reach and lift even light objects in other directions. In assessing the RFC, the ALJ had to determine his ability to reach in all directions.

The ALJ ultimately decided Whalen could reach overhead bilaterally on an occasional basis, or up to one-third of an eight-hour workday. According to the VE, this level of reaching matched Whalen's upper extremity limits to available jobs. But the medical evidence does not

11

address this functional capacity, and Whalen's testimony, the only non-medical evidence, contradicts it. The ALJ considered the possibility that Whalen might not be able to reach overhead at all, an option that the VE testified would eliminate any jobs. R. 78-79. Even if limited to occasional reaching in all directions, the VE testified that an upper extremity limitation would eliminate all jobs. R. 81. Making this case-determinative distinction regarding Whalen's functional capacity based on medical records that clearly demonstrate limitations, but not the extent thereof, is clearly outside any "common-sense decision" that a lay person may appropriately make.

Likewise, the functional impact of Whalen's knee impairments was beyond the ALJ's expertise. Whalen's testimony, the only non-medical evidence, did not support the determination that he could perform light work. Again, the medical evidence demonstrates significant limitations but does not define the parameters of a bilateral limitation. Furthermore, whether Whalen is limited to light or sedentary work is critical because if restricted to sedentary work, he would grid on his fiftieth birthday.

The ALJ pointed out several times that the doctor's treatment records did not include work-related restrictions (other than the not insignificant suggestion that Whalen use a walker or cane as needed). Assuming, without deciding, that an ALJ may properly draw an adverse inference against a claimant based on a treating source declining to provide a medical opinion, the ALJ still lacks a record that determines the extent of Whalen's functional limitations. These medical records do indeed demonstrate restrictions that any lay person would understand impact the ability to work. The RFC, with its significant restrictions, confesses this fact. However, the record lacks opinions  defining the extent of Whalen's "work related restrictions" in terms of functional limitations.

Because the ALJ based his opinion of Whalen's functional limitations on raw medical evidence, thereby impermissibly playing doctor, the decision is not supported by substantial evidence. The RFC rests on the ALJ's interpretation of Whalen's medical records and how he thinks those medical findings translate to functional abilities. The Social Security Administration assumed the "duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits," *Ripley*, 67 F.3d at 557, and in this case, the ALJ failed to discharge that duty. *Howell v. Berryhill*, No. 4:16CV202-RP, 2017 WL 2414734 at *4 (N.D. Miss. June 2, 2017) (ALJ erred in failing to obtain a medical opinion after an MRI indicated the plaintiff's back condition had worsened); *Connie C. v. Berryhill*, No. 5:18-CV-169-BQ, 2019 WL 2516727 (N.D. Tex. May 5, 2019) *report and recommendation adopted*, 2019 WL 251588 (N.D. Tex. June 18, 2019) (The ALJ's decision was not supported by substantial evidence because the record contained no medical opinions about the impact of the plaintiff's mental conditions on her ability to work and the ALJ cited and relied upon raw medical data to formulate the RFC); *see also*, *Raper v. Colvin*, 262 F. Supp. 3d 415 (N.D. Tex. Feb. 17, 2017) (compiling cases finding an ALJ may not independently craft an RFC based on a claimant's medical conditions). Here, the failure to develop the record is reversible error.

### D. DIFFICULTY IN CORRECTING RECORD DEVELOPMENT ERROR

While any error that needs to be reversed on appeal delays litigants, failing to develop the record in Social Security cases is particularly troublesome, because the delay may make the error difficult or impossible to correct on remand. A timely CE or medical source statement provides clarity about a claimant's remaining capacity during the pertinent time-period. A belated CE may be of limited or no value and may fail to accurately assess a claimant's ability to work during the pertinent time. A retrospective review of medical records will be limited to records that may not

contain all the information needed to assess functional capacity. This added difficulty in ameliorating the error on remand counsels against denying CEs and obtaining supporting opinions in all but the most clear-cut cases, particularly considering that it serves both the Commissioner's and the claimant's interest to err on the side of obtaining this information on a timely basis.

While the ALJ should have ordered a CE, there are other ways to discharge the responsibility to develop the record. The agency could have contacted treating sources to request a medical source statement. While a treating or examining physician's review is preferable, the ALJ could have the state agency medical consultants review the additional records or obtain testimony from a medical expert after review thereof.

The court leaves it to the agency's discretion to determine how the error in this case will be addressed and corrected on remand.

## III.   <u>CONCLUSION</u>

**ACCORDINGLY, IT IS HEREBY ORDERED,** for the above reasons, that the decision of the Commissioner is reversed, and this matter remanded for further proceeding, consistent with this opinion.

This the 11th day of August, 2022.

**/s/ David A. Sanders**
**UNITED STATES MAGISTRATE JUDGE**
